IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. CHARLES

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

BRANDON J. CHARLES, APPELLANT.

Filed November 5, 2019.    No. A-19-011.

Appeal from the District Court for Douglas County: GARY B. RANDALL, Judge. Affirmed.

Nathan S. Lab, of McGough Law, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.

MOORE, Chief Judge, and PIRTLE and BISHOP, Judges.

PIRTLE, Judge.

## INTRODUCTION

Brandon J. Charles appeals his plea-based convictions and sentences in the Douglas County District Court for robbery and use of a deadly weapon to commit a felony. He claims that the district court erred in failing to advise him a guilty plea would waive his right to appeal an earlier suppression motion, that his sentences are excessive, and that his trial counsel provided ineffective assistance. Based on the reasons that follow, we affirm Charles' convictions and sentences.

## BACKGROUND

In December 2017, Charles was charged with two counts of robbery and two counts of use of a deadly weapon (firearm) to commit a felony. Following the denial of Charles' motion to suppress, the State agreed to dismiss one count of robbery and one count of use of a deadly weapon to commit a felony in exchange for Charles' pleas to the remaining two charges. Based on the

- 1 -

pleas, the Sarpy County Attorney's Office also agreed not to pursue charges related to another robbery for which Charles was a suspect.

At the plea hearing, the State provided the following factual basis for the charges:

[O]n October 31, 2017, officers received a call for a robbery at Walgreen's located at 9001 Blondo Street here in Omaha, Douglas County. They were advised at that time that, based on a prior robbery of October 13 of 2017, pharmacists and store employees at Walgreen's put a GPS tracking device inside the items that were taken. The defendant as well as the co-defendant entered the store, both armed with firearms, demanded cash and Percocet pills. This defendant went to the cashiers while the co-defendant went to the pharmacy area. They left with an undisclosed amount of cash as well as Percocet pills. Inside those was a GPS tracker that led officers to 3445 North 103rd Plaza, where they made contact with the defendant as well as the co-defendant in a vehicle in that parking lot. Inside the vehicle were cash as well as the pills that were taken from Walgreen's. The defendant was then Mirandized. There was an unsolicited statement where he acknowledged he did the Walgreen's robbery. Those events occurred in Omaha, Douglas County.

Prior to accepting Charles' plea, the trial court informed him of the rights he would be giving up if his pleas were accepted, and the possible sentences that could be imposed. The trial court found beyond a reasonable doubt that Charles understood the nature of the charges against him; the possible sentences that could be imposed; that his pleas were made freely, intelligently, voluntarily, and understandingly; and that there was a factual basis to support the guilty plea. The trial court found Charles guilty of one count of robbery and one count of use of a deadly weapon to commit a felony and ordered a presentence investigation.

A sentencing hearing took place on December 13, 2018, and the court sentenced Charles to 15 to 25 years' imprisonment on the charge of robbery and 15 to 20 years' imprisonment on the charge of use of a deadly weapon to commit a felony, with the sentences to run consecutively. The court gave Charles 409 days' credit for time served.

ASSIGNMENTS OF ERROR

Charles assigns that (1) the trial court erred in failing to advise him that by pleading guilty, he would waive his right to appeal the court's denial of his suppression motion; (2) the trial court abused its discretion in sentencing him to an excessive sentence; and (3) he was prejudiced by the ineffective assistance of trial counsel.

STANDARD OF REVIEW

A trial court is given discretion as to whether to accept a guilty plea, and an appellate court will overturn that decision only where there is an abuse of discretion. *State v. Lane*, 299 Neb. 170, 907 N.W.2d 737 (2018).

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Manjikian*, 303 Neb. 100, 927 N.W.2d 48 (2019). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable,

unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Vanness*, 300 Neb. 159, 912 N.W.2d 736 (2018). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

## ANALYSIS

### WITHDRAWAL OF PLEA

Charles first argues that he should be able to withdraw his prior pleas of guilty and that his current convictions and sentences should be vacated. Charles contends that the district court was required, and failed, to "advise [him] that by entering a guilty plea he would give up the right to challenge the admissibility of the State's evidence[.]" Brief for appellant at 10. Charles claims that had he been made aware that a guilty plea would waive his right to challenge the district court's ruling on his previous suppression motion, he would have proceeded to trial. In essence, Charles argues that his plea was not made freely, intelligently, voluntarily, and understandingly. We disagree.

In *State v. Manjikian, supra*, the defendant argued that the plea agreement he entered into with the State was not entered into freely, intelligently, voluntarily, and understandingly. Like Charles, the defendant argued that "the district court failed to advise him that by entering into the plea agreement, he waived his right to appeal any adverse decisions had he filed pretrial motions or proceeded to trial." *Id.* at 106, 927 N.W.2d at 56. In *Manjikian*, however, the Nebraska Supreme Court reiterated that

> [u]nder our holding in *State v. Lane*, to support a finding that a defendant has entered a guilty plea freely, intelligently, voluntarily, and understandingly, a court must inform a defendant about (1) the nature of the charge, (2) the right to assistance of counsel, (3) the right to confront witnesses against the defendant, (4) the right to a jury trial, and (5) the privilege against self-incrimination. The record must also establish a factual basis for the plea and that the defendant knew the range of penalties for the crime charged.

*Id.* (citing *State v. Lane*, 299 Neb. 170, 907 N.W.2d 737 (2018)). Notably, the Supreme Court specifically declined to extend its ruling and adopt the American Bar Association's Standard 14-1.4(a)(vi), "requiring the court to advise the defendant that 'by pleading guilty the defendant generally waives the right to appeal, except the right to appeal a motion that has been made, ruled upon and expressly reserved for appeal and the right to appeal an illegal or unauthorized sentence.'" *Id.* at 107, 927 N.W.2d at 56 (citing ABA Standards for Criminal Justice, Pleas of Guilty, Standard 14-1.4(a)(vi) at 36 (3d ed. 1999)).

In this case, Charles does not argue that the trial court failed to inform him about any of his rights required under *State v. Lane, supra*, and reaffirmed in *State v. Manjikian*, 303 Neb. 100, 927 N.W.2d 48 (2019). Regardless, the record clearly establishes that the trial court advised

Charles of all of the requirements to support a finding that his plea of guilty was entered into freely, intelligently, voluntarily, and understandingly. Because the court met the requirements established by the Supreme Court and was not required to inform Charles that his guilty plea waived his right to appeal the denial of his earlier suppression motion, this argument fails.

EXCESSIVE SENTENCES

Charles next argues that the trial court imposed excessive sentences. We find that that the trial court did not abuse its discretion in sentencing Charles.

Under Neb. Rev. Stat. § 28-324(2) (Reissue 2016), robbery is classified as a Class II felony. A Class II felony, under Neb. Rev. Stat. § 28-105(1) (Reissue 2016), is punishable by imprisonment for a minimum of 1 year and a maximum of 50 years. The trial court sentenced Charles to 15 to 25 years' imprisonment on the charge of robbery.

Under Neb. Rev. Stat. § 28-1205(1)(c) (Reissue 2016), use of a deadly weapon (firearm) to commit a felony is a Class IC felony. A Class IC felony, under § 28-105(1), is punishable by imprisonment for a minimum of 5 years and a maximum of 50 years. The trial court sentenced Charles to 15 to 20 years' imprisonment on the charge of use of a deadly weapon (firearm) to commit a felony. Furthermore, under § 28-1205(3), a sentence for the crime of use of a deadly weapon to commit a felony must run consecutively to any other sentence imposed.

Charles' sentences clearly were within the statutory limits. Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Smith*, 302 Neb. 154, 922 N.W.2d 444 (2019) (citing *State v. Mueller*, 301 Neb. 778, 920 N.W.2d 424 (2018)). In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id*. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

Charles argues that the "entirety of the District Court's reasoning for the sentence imposed consists of one paragraph[.]" Brief for appellant at 12. We disagree. After accepting his pleas of guilty, the trial court ordered a presentence investigation and scheduled the sentencing hearing for several weeks later. At the sentencing hearing, Charles' trial counsel was given the opportunity to speak, at length, to Charles' young age; his history of drug abuse, need for treatment, and how it relates to the charges; the trauma experienced from witnessing his cousin be shot in the head at a young age; his ongoing mental health issues; his statement in the presentence investigation indicating his remorse and desire to seek treatment; and his desire to have the opportunity to be involved in his two children's lives and be a productive member of society. The court also provided Charles the opportunity to speak on his own behalf, during which he apologized for the crimes and argued that he received ineffective counsel throughout the case. After hearing from Charles, his attorney, and the State, the court noted:

Well, Mr. Charles, in preparing for this sentencing, of course, I reviewed the Presentence Investigation and I considered your law-abiding conduct in the past, as well as your record. And your record, unfortunately, is extensive. You scored a 29 on the LSCMI, which is virtually the highest score possible. Because the crimes that you were convicted of, you're not eligible for probation. And, in fact, there were two robberies on two different occasions and two uses of a deadly weapon. Now, that is not what the conviction is and that's not what you're getting sentenced on. But those were the charges the State brought against you, and that's what all occurred in a very short period of time right around August -- or, I'm sorry, October of 2017. I don't find you to be an appropriate candidate for probation. I'm going to find on the charge of robbery, I'm going to sentence you to 15 to 25 years in the Nebraska Department of Correctional Services. And on use of a deadly weapon to commit a felony, I'm sentencing you to 15 to 20 years.

In addition to providing the opportunity for all the parties to speak at the sentencing hearing, including Charles himself, the court indicated it had considered the presentence investigation, particularly Charles' extensive record and high score on the Level of Service/Case Management Inventory (LS/CMI), which is used "to determine the degree of risk that the offender presents to the community and the risk to recidivate." The court also considered the fact that two separate robberies had occurred within a short timeframe and both involved use of a deadly weapon, while acknowledging that was not what Charles ultimately was being sentenced on pursuant to the plea agreement.

We note that the court sentenced Charles near the middle of the statutory range on both charges. The record does not indicate that the court considered any improper factors, and we find that the trial court did not abuse its discretion in imposing a sentence of 15 to 25 years' imprisonment for the charge of robbery and 15 to 20 years' imprisonment on the charge of use of a deadly weapon to commit a felony.

INEFFECTIVE ASSISTANCE OF COUNSEL

Charles also contends that he received ineffective assistance of trial counsel. However, the State argues, and we agree, that Charles' assigned error did not allege deficient performance with sufficient specificity to be considered on appeal. Earlier this year, the Supreme Court held in *State v. Mrza*, 302 Neb. 931, 935, 926 N.W.2d 79, 86 (2019):

We have held that when raising an ineffective assistance claim on direct appeal, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. And we have long held that an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. It follows that we should not have to scour the argument section of an appellant's brief to extract specific allegations of deficient performance. We now hold that assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity.

Charles, in his brief, generally assigned that he "was prejudiced by the ineffective assistance of counsel." Brief for appellant at 4. Nowhere in this assignment of error does Charles allege with specificity the conduct of trial counsel alleged to be deficient. Notably, *State v. Mrza, supra*, was released on April 19, 2019. Charles filed his brief on May 17, 2019, nearly a month after the Supreme Court released its opinion in *Mrza*. Therefore, we find that Charles has not properly assigned his ineffective assistance of trial counsel claim, and we do not consider its merits on this appeal.

## CONCLUSION

We find that Charles' plea of guilty was entered into freely, intelligently, voluntarily, and understandingly and with a sufficient factual basis, and that his sentences were not excessive. We also find that Charles has not sufficiently assigned as error his claim of ineffective assistance of trial counsel. Accordingly, Charles' convictions and sentences are affirmed.

AFFIRMED.