Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/02/2020 08:12 AM CDT

STATE OF NEBRASKA, APPELLEE, V.
BRADEN M. GALVAN, APPELLANT.

___ N.W.2d ___

Filed April 10, 2020.    Nos. S-19-623, S-19-624.

1. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, which an appellate court reviews independently of the lower court.
2. **Sentences: Probation and Parole: Appeal and Error.** An appellate court will not disturb a decision to impose imprisonment up to the remaining period of post-release supervision after revocation absent an abuse of discretion by the trial court.
3. ____: ____: ____. Whether a defendant is entitled to credit for time served and in what amount are questions of law, subject to appellate review independent of the lower court.
4. **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.
5. **Statutes: Legislature: Intent.** Components of a series or collection of statutes pertaining to a certain subject matter are in pari materia and should be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions are consistent, harmonious, and sensible.
6. **Sentences: Probation and Parole: Time.** When determining the amount of time remaining on a term of post-release supervision, the court may include any period in which the probationer absconded.
7. **Appeal and Error.** An appellate court may, at its option, notice plain error.
8. **Appeal and Error: Words and Phrases.** Plain error exists where there is an error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of

justice or result in damage to the integrity, reputation, and fairness of the judicial process.

9. **Sentences: Appeal and Error.** A sentence that is contrary to the court's statutory authority is an appropriate matter for plain error review.

10. **Sentences.** A sentence is illegal when it is not authorized by the judgment of conviction or when it is greater or less than the permissible statutory penalty for the crime.

11. ____. Generally, it is within a trial court's discretion to direct that sentences imposed for separate crimes be served either concurrently or consecutively. This is so even when offenses carry a mandatory minimum sentence, unless the statute requires that consecutive sentences be imposed.

12. **Criminal Law: Probation and Parole.** The violation of probation is not itself a crime, but merely a mechanism which may trigger the revocation of a previously granted probation.

13. ____: ____. A motion to revoke probation is not a criminal proceeding.

14. **Probation and Parole.** A probation revocation hearing is considered a continuation of the original prosecution for which probation was imposed—in which the purpose is to determine whether a defendant has breached a condition of his or her existing probation, not to convict that individual of a new offense.

15. **Sentences.** Presentence credit is to be applied only once when the defendant has multiple charges or multiple cases pending simultaneously.

16. **Sentences: Records.** When a court grants a defendant more or less credit for time served than the defendant actually served, that portion of the pronouncement of sentence is erroneous and may be corrected to reflect the accurate amount of credit as verified objectively by the record.

Appeals from the District Court for Hall County: MARK J. YOUNG, Judge. Sentences affirmed in part as modified, and in part vacated.

Gerard A. Piccolo, Hall County Public Defender, for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

Funke, J.

In this appeal, Braden M. Galvan argues that the district court for Hall County exceeded its authority under Neb. Rev. Stat. § 29-2268(2) (Reissue 2016) by imposing consecutive 5-month terms of imprisonment following Galvan's revocation from post-release supervision in two cases. Upon review of the record, we find that Galvan's second 5-month term of imprisonment must be vacated. In addition, we find that Galvan is entitled to jail time credit. Thus, regarding Galvan's sentences, we affirm in part as modified, and in part vacate.

## BACKGROUND

In October 2017, Galvan entered a plea of no contest to operating a motor vehicle to avoid arrest, a Class IV felony, and driving during suspension, first offense, a Class III misdemeanor. In December, the district court for Hall County sentenced Galvan to 2 years' imprisonment and 12 months' post-release supervision on the operating a motor vehicle to avoid arrest conviction and to 90 days' imprisonment on the driving during suspension conviction. The court ordered the sentences to be served concurrently and awarded 76 days' credit for time served.

In January 2018, in a new case in Hall County, Galvan pled no contest to assault by a confined person, a Class IIIA felony. The court sentenced Galvan to 180 days' imprisonment and 12 months' post-release supervision, to be served consecutively to the sentences in the prior case.

Although his sentences were ordered to be served consecutively, Galvan began serving the post-release supervision portion of his sentences in both cases on October 10, 2018. The State moved to revoke Galvan's post-release supervision in both cases on December 6, alleging that Galvan had failed to report to his probation officer, abstain from the use of controlled substances, and follow an individualized treatment plan.

The court held a hearing on the motions to revoke on April 16, 2019. Pursuant to an agreement with the State,

Galvan admitted to the violations in both cases, and the court revoked his post-release supervision in both cases. The court revoked Galvan's bond and remanded him into custody pending sentencing.

At the sentencing hearing, on June 19, 2019, Galvan's counsel stated that the maximum sentence available to the court upon revocation from post-release supervision would be a term of imprisonment lasting until October 10, plus 70 days due to the time that Galvan had absconded from supervision. The court imposed a sentence of 5 months' imprisonment in each case and ordered the sentences to run consecutively. The court awarded no credit for the time that Galvan spent in custody between the date his post-release supervision was revoked and the date of sentencing. Galvan appealed.

## ASSIGNMENTS OF ERROR

Galvan assigns that the district court erred in (1) imposing consecutive sentences and (2) failing to award credit for time served after revocation, prior to sentencing.

## STANDARD OF REVIEW

[1-3] Statutory interpretation presents a question of law, which an appellate court reviews independently of the lower court.[1] An appellate court will not disturb a decision to impose imprisonment up to the remaining period of post-release supervision after revocation absent an abuse of discretion by the trial court.[2] Whether a defendant is entitled to credit for time served and in what amount are questions of law, subject to appellate review independent of the lower court.[3]

## ANALYSIS

Galvan contends that the court exceeded its authority under § 29-2268(2) in sentencing him to two consecutive terms of 5

[1] *State v. Phillips*, 302 Neb. 686, 924 N.W.2d 699 (2019).

[2] *Id*.

[3] *Id*.

months' imprisonment upon his revocation from post-release supervision. He further contends that the court should have awarded him credit for the time he spent in custody awaiting sentencing after his revocation.

[4,5] In considering Galvan's arguments, we are guided by familiar rules of statutory construction. Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[4] Components of a series or collection of statutes pertaining to a certain subject matter are in pari materia and should be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions are consistent, harmonious, and sensible.[5]

Post-release supervision is a form of probation.[6] Post-release supervision is defined by statute as "the portion of a split sentence following a period of incarceration under which a person found guilty of a crime . . . is released by a court subject to conditions imposed by the court and subject to supervision by the [Office of Probation Administration]."[7] Once a court revokes a probationer's post-release supervision, it must then determine the appropriate term of imprisonment to be imposed. The controlling statute is § 29-2268, which provides:

> (2) If the court finds that a probationer serving a term of post-release supervision did violate a condition of his or her post-release supervision, it may revoke the post-release supervision and impose on the offender a term of imprisonment up to the remaining period of post-release supervision. The term shall be served in an institution under the jurisdiction of the Department of Correctional

---

[4] *State v. Wal*, 302 Neb. 308, 923 N.W.2d 367 (2019).

[5] *Id*.

[6] See, Neb. Rev. Stat. § 29-2246(4) (Reissue 2016); *Phillips, supra* note 1.

[7] § 29-2246(13).

Services or in county jail subject to subsection (2) of section 28-105.[8]

[6] We held in *State v. Phillips*[9] that in order to calculate a probationer's "remaining period of post-release supervision," the court must subtract the number of days actually served from the number of days ordered to be served. When a court has pronounced the period of post-release supervision in terms of months, that period will need to be converted to a number of days in order to calculate the "remaining period of post-release supervision" under § 29-2268(2).[10] A calendar month is a period terminating with the day of the succeeding month, numerically corresponding to the day of its beginning, less one.[11] "Except as may be otherwise more specifically provided, the period of time within which an act is to be done in any action or proceeding shall be computed by excluding the day of the act, event, or default after which the designated period of time begins to run."[12] When determining the amount of time remaining on a term of post-release supervision, the court may include any period in which the probationer absconded.[13]

## Plain Error

[7-10] Before we address Galvan's argument regarding the "remaining period of post-release supervision" under § 29-2268(2), we must first address the district court's plain error in revoking Galvan's second term of post-release supervision and in imposing a 5-month term of imprisonment for that term. An appellate court may, at its option, notice plain

---

[8] But see 2019 Neb. Laws, L.B. 686, § 8 (amending "remaining" to "original" in § 29-2268(2), operative September 1, 2019).

[9] *Phillips, supra* note 1.

[10] *Id*.

[11] *Id*.

[12] Neb. Rev. Stat. § 25-2221 (Reissue 2016).

[13] *Phillips, supra* note 1.

error.[14] Plain error exists where there is an error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process.[15] A sentence that is contrary to the court's statutory authority is an appropriate matter for plain error review.[16] A sentence is illegal when it is not authorized by the judgment of conviction or when it is greater or less than the permissible statutory penalty for the crime.[17]

Galvan was convicted of two separate felonies, and as part of his sentence in each case, he was ordered to serve a 12-month term of post-release supervision. Even though Galvan's sentences were ordered to be served consecutively, after he completed the initial incarceration portion of his sentences, he began serving both terms of post-release supervision on the same date. Upon the State's motions to revoke each term, the court sustained the motions and revoked both terms and imposed imprisonment for both terms. The court's revocation and imposition of imprisonment in Galvan's second felony case constitutes plain error, because the court was required by law to require that Galvan serve his sentences consecutively.

[11] Generally, it is within a trial court's discretion to direct that sentences imposed for separate crimes be served either concurrently or consecutively.[18] Such discretion applies equally to terms of imprisonment and terms of post-release supervision[19] and presumably includes discretion to make one form consecutive and the other concurrent. This is so even

---

[14] *Mays v. Midnite Dreams*, 300 Neb. 485, 915 N.W.2d 71 (2018).

[15] *Id*.

[16] *State v. Kantaras*, 294 Neb. 960, 885 N.W.2d 558 (2016).

[17] *Id*.

[18] *State v. Vanness*, 300 Neb. 159, 912 N.W.2d 736 (2018).

[19] See *id.* See, also, *State v. Peters*, 231 Neb. 242, 435 N.W.2d 675 (1989).

when offenses carry a mandatory minimum sentence, unless the statute requires that consecutive sentences be imposed.[20] Here, Galvan was convicted of assault by a confined person, in violation of Neb. Rev. Stat. § 28-932(1) (Reissue 2016). With regard to sentencing, § 28-932(2) provides: "Sentences imposed under subsection (1) of this section shall be consecutive to any sentence or sentences imposed for violations committed prior to the violation of subsection (1) of this section . . . ." The use of the word "shall" in § 28-932(2) mandates consecutive sentencing.[21] In this matter, 1 month prior to his sentence in the assault by a confined person case, Galvan was sentenced on one count of operating a motor vehicle to avoid arrest. Under the plain language of § 28-932(2), the district court was required by law to order the assault by a confined person sentence to run consecutive to the prior sentence.

In January 2018, the court ordered that Galvan serve his sentences consecutively. Because Galvan's sentences were to be served consecutively, and a term of post-release supervision was imposed as a part of each sentence, Galvan was required to serve the terms of post-release supervision consecutively. Although post-release supervision remains a relatively new concept in Nebraska sentencing law, we have previously recognized that terms of post-release supervision may be served consecutively. For example, as relevant here, in *State v. Vanness*,[22] this court approved consecutive sentences of 12 months' imprisonment and 9 months of post-release supervision and 10 months' imprisonment and 9 months of post-release supervision. We described the later 9-month term of post-release supervision as "a period of 9 months of successive and additional post[-]release supervision."[23]

---

[20] *Vanness, supra* note 18.

[21] See *State v. Russell*, 248 Neb. 723, 539 N.W.2d 8 (1995).

[22] *Vanness, supra* note 18.

[23] *Id*. at 170, 912 N.W.2d at 746.

When a consecutive sentence is imposed, the second sentence begins only upon the termination of the prior term of imprisonment.[24] A prisoner who receives multiple consecutive sentences does not serve all sentences simultaneously, but serves only one sentence at a time.[25] As referenced above, § 29-2268(2) provides: "If the court finds that a probationer *serving a term of post-release supervision* did violate a condition of his or her post-release supervision, it may revoke the post-release supervision and impose on the offender a term of imprisonment . . . ." (Emphasis supplied.) According to the plain and ordinary meaning of § 29-2268(2), a court's authority to revoke a probationer and impose a term of imprisonment extends only to the single term of post-release supervision that the probationer is serving, provided that the probationer has not otherwise been ordered to serve multiple terms concurrently.

Our understanding that Galvan had not yet begun serving his second term of post-release supervision is further confirmed by Neb. Rev. Stat. § 29-2204.02(7)(d) (Reissue 2016), which states that "[i]f the offender has been sentenced to two or more determinate sentences and one or more terms of post-release supervision, the offender shall serve all determinate sentences before being released on post-release supervision." In this case, Galvan received determinate sentences of 2 years' imprisonment for operating a motor vehicle to avoid arrest and 180 days' imprisonment for assault by a confined person. Even though the split sentences were ordered to run consecutively, Galvan complied with the requirements of § 29-2204.02(7)(d) by completing the incarceration portion of his sentences before being released on post-release supervision. To hold otherwise would grant prisoners sentenced to consecutive determinate sentences freedom

---

[24] *U.S. v. Randall*, 472 F.3d 763 (10th Cir. 2006), citing *Price v. State*, 28 Kan. App. 2d 854, 21 P.3d 1021 (2001).

[25] *Id.*

from confinement during intervening periods of post-release supervision.[26] However, once the court revoked Galvan's post-release supervision in his first case and sentenced him to a 5-month term of imprisonment, he received another determinate sentence, and because the terms were ordered to run consecutively, the court erred by not requiring him to complete serving the 5-month term of imprisonment in his first case before releasing him on post-release supervision in his second case. Under § 29-2204.02(7)(d), Galvan should not have been permitted to commence serving his second term of post-release supervision. Because Galvan was not serving his second term of post-release supervision, the court was not yet authorized to act upon that second term under § 29-2268(2). Galvan was required by law under § 28-932(2) to serve the terms of post-release supervision consecutively. The court's revocation of Galvan's second term of post-release supervision and imposition of imprisonment for that term, prior to Galvan's completion of his first term, is plain error. This affected a substantial right of Galvan, and to leave this error uncorrected would amount to a miscarriage of justice. We therefore vacate the court's revocation and imposition of imprisonment in Galvan's assault by a confined person case.

Because the court had no discretion regarding the consecutive nature of Galvan's sentences, we need not address the issue of whether a court may in its discretion order terms of imprisonment imposed upon revocation to be served consecutively.

## No Abuse of Discretion
## Under § 29-2268(2)

We next address Galvan's argument that the court exceeded its statutory authority under § 29-2268(2), to the extent that it remains at issue. For purposes of calculating the "remaining period of post-release supervision" under § 29-2268(2), we consider only the time Galvan served on his first term of post-release supervision.

---

[26] See *State v. Malone*, 928 S.W.2d 41 (Tenn. Crim. App. 1995).

Regarding Galvan's operating a motor vehicle to avoid arrest conviction, a Class IV felony, he received the maximum sentence of 2 years' imprisonment and 12 months' post-release supervision. While there is limited information in our record regarding Galvan's completion of the incarceration portion of his split sentence, it is undisputed that he began serving post-release supervision on October 10, 2018, and was originally scheduled to complete serving this term on October 10, 2019. The court revoked Galvan's post-release supervision on April 16, 2019. At that point, Galvan had served 188 days of the original term of 12 months, or 365 days, with 177 days remaining to be served. In addition, the parties agree that the district court correctly extended Galvan's "remaining period of post-release supervision" by 70 days due to his period of abscondment. Therefore, at the time the court revoked Galvan's post-release supervision, he had 247 days remaining to be served. As of Galvan's sentencing on June 19, 2019, the court was authorized under § 29-2268(2) to impose a term of imprisonment up to February 21, 2020, or a term of 8 months 2 days. The court imposed a 5-month term of imprisonment in Galvan's operating a motor vehicle to avoid arrest case.

Galvan acknowledges that based on the calculation above, the court had the authority to impose a single 5-month term of imprisonment under § 29-2268(2). Because the maximum term of imprisonment under § 29-2268(2) applies to a single conviction, and because the court had the authority to impose a 5-month term of imprisonment for Galvan's operating a motor vehicle to avoid arrest conviction, Galvan's argument is without merit.

CREDIT FOR TIME SERVED

Here, Galvan contends the trial court was required to credit him for the 64 days he spent in custody awaiting sentencing after he had been revoked from post-release supervision. As a matter of statute and case law, we agree with Galvan.

Neb. Rev. Stat. § 47-503(1) (Reissue 2010) provides credit for "time spent in jail as a result of the criminal charge for

which the jail term is imposed." Galvan's revocation from post-release supervision did not result in new criminal charges.[27] The 64 days Galvan spent in confinement after he was revoked from post-release supervision was a result of the original criminal charges.

[12-14] The violation of probation is not itself a crime, but merely a mechanism which may trigger the revocation of a previously granted probation.[28] A motion to revoke probation is not a criminal proceeding.[29] A probation revocation hearing is considered a continuation of the original prosecution for which probation was imposed—in which the purpose is to determine whether a defendant has breached a condition of his or her existing probation, not to convict that individual of a new offense.[30] Accordingly, jail time after revocation of post-release supervision, a form of probation, constitutes continuing punishment for the crime for which post-release supervision was originally imposed.

Postrevocation penalties are attributable to the original conviction.[31] The post-release supervision portion of Galvan's sentence included the contingency that he could be imprisoned if the post-release supervision was revoked. Galvan triggered that contingency when he violated the terms of post-release supervision and it was revoked, but he did not commit a new crime or receive a sentence on a new crime. The length of time Galvan spent in jail after revocation relates back to the sentence originally imposed for the criminal conviction.[32]

---

[27] See *State v. Corkum*, 224 N.C. App. 129, 735 S.E.2d 420 (2012).

[28] *State v. Caniglia*, 272 Neb. 662, 724 N.W.2d 316 (2006); *State v. Wragge*, 246 Neb. 864, 524 N.W.2d 54 (1994); *State v. Painter*, 223 Neb. 808, 394 N.W.2d 292 (1986).

[29] *In re Interest of Rebecca B.*, 280 Neb. 137, 783 N.W.2d 783 (2010).

[30] *Id*.

[31] *Johnson v. United States*, 529 U.S. 694, 120 S. Ct. 1795, 146 L. Ed. 2d 727 (2000).

[32] See *Medina v. State*, 418 P.3d 861 (Alaska App. 2018).

Therefore, § 47-503(1) applies to the time Galvan spent in jail after revocation.

[15] Section 47-503 is intended to ensure that defendants receive all the credit against their jail sentence to which they are entitled—no less, and no more.[33] Presentence credit is to be applied only once when the defendant has multiple charges or multiple cases pending simultaneously.[34] Here, Galvan's days of confinement have not been credited to any other sentence. That fact distinguishes this case from the jail time credit issue addressed in *Phillips*.[35] In that case, the defendant did not spend any time in jail after revocation and before sentencing under § 29-2268(2). Rather, the court revoked the probationer's post-release supervision and sentenced him on the same day. The defendant requested credit for time spent in custody prior to revocation, but on appeal, we concluded that his confinement time was an aspect of the administration of his sentence of post-release supervision, and not as a result of the original charge.[36] As such, the defendant's confinement time was credited against his remaining term of post-release supervision. This is unlike the present case, in which Galvan's confinement time has not been credited against his remaining term of post-release sentence or any other sentence. Failing to award Galvan jail time credit would be double punishment.[37]

It is worth noting that since our opinion in *Phillips*, the Legislature amended § 29-2268(2), operative September 1, 2019, after Galvan's June 2019 sentencing, to state that "[i]f a sentence of incarceration is imposed upon revocation of post-release supervision, the court shall grant jail credit for any days

---

[33] *State v. Harms*, 304 Neb. 441, 934 N.W.2d 850 (2019).

[34] See, *State v. Wills*, 285 Neb. 260, 826 N.W.2d 581 (2013); *State v. Williams*, 282 Neb. 182, 802 N.W.2d 421 (2011).

[35] *Phillips, supra* note 1.

[36] *Id*.

[37] See *State v. Rawls*, 219 N.J. 185, 97 A.3d 1142 (2014).

spent in custody as a result of the post-release supervision, including custodial sanctions."

[16] We determine that Galvan is entitled to 64 days of jail time credit. When a court grants a defendant more or less credit for time served than the defendant actually served, that portion of the pronouncement of sentence is erroneous and may be corrected to reflect the accurate amount of credit as verified objectively by the record.[38] In addition to vacating a portion of the court's sentencing order, as discussed above, we modify the order to reflect the correct number of days of credit for time served.

## CONCLUSION

We vacate the 5-month term of imprisonment imposed upon revocation in Galvan's assault by a confined person case. Galvan will not commence serving the post-release supervision term in his assault by a confined person case until he has completed serving his post-release supervision term in his operating a motor vehicle to avoid arrest case. We affirm the 5-month term of imprisonment imposed in Galvan's operating a motor vehicle to avoid arrest case, as modified by crediting Galvan with 64 days of time served.

Sentences affirmed in part as modified,
and in part vacated.

---

[38] *State v. Clark*, 278 Neb. 557, 772 N.W.2d 559 (2009).