IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF VANCE B.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF VANCE B., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

VANCE B., APPELLANT.

Filed July 28, 2020.    No. A-19-877.

Appeal from the County Court for Scotts Bluff County: JAMES M. WORDEN, Judge. Affirmed.

Jessica R. Meyers, Deputy Scotts Bluff County Public Defender, for appellant.

Paul W. Snyder, Deputy Scotts Bluff County Attorney, for appellee.

PIRTLE, RIEDMANN, and ARTERBURN, Judges.

ARTERBURN, Judge.

INTRODUCTION

Vance B. appeals from an order of the county court for Scotts Bluff County, sitting as a juvenile court, adjudicating him as a juvenile within the meaning of Neb. Rev. Stat. § 43-247(2) (Reissue 2016) and finding beyond a reasonable doubt that he committed the crime of first degree sexual assault, forcible, under Neb. Rev. Stat. § 28-319(1)(a) (Reissue 2016). On appeal, Vance challenges the court's determination that the juvenile victim was competent to testify. We affirm.

- 1 -

BACKGROUND

On April 8, 2019, the State filed a juvenile court petition to adjudicate Vance as a juvenile within the meaning of § 43-247(2) and alleged that he committed the crime of first degree sexual assault, forcible, under § 28-319(1)(a). The petition identified that Vance was a juvenile under the age of 18 and asserted that, on or about June 1, 2016, he had subjected another person to sexual penetration without consent. The State identified Vance's date of birth as October 1, 2004.

Vance's initial appearance was on April 29, 2019. At that time, the court advised him of his rights and explained the possible dispositions. The court also appointed counsel to represent Vance in the matter.

On August 22, 2019, a contested adjudication was held. The State moved to amend the complaint to reflect that the offense was committed on or about June 1 through July 31, 2016, which the court granted over Vance's objection. The State elicited testimony from two witnesses, and Vance testified in his own behalf and elicited testimony from two additional witnesses. Four exhibits were admitted. We will confine our discussion of the evidence to that which is relevant to the question of the juvenile victim's competency to testify.

The State called the juvenile victim, I.A., to testify, and the court conducted a brief colloquy before swearing her in and allowing her to testify. The court asked I.A. to state her name, age, and the name of the school she attended. She provided the court with her nickname, said that she was 7 years old, and identified "Bayard" as where she went to school. She told the court that there were 13 children in her class. I.A. also stated that her mother brought her to court, and she provided her mother's first name. The court discussed with I.A. the difference between a truth and a lie:

> THE COURT: Okay. So if I were to tell a friend of mine that you went to Scottsbluff to school, would that be a truth or a lie?
> [I.A.]: The truth.
> THE COURT: Where do you go to school?
> [I.A.]: I go to school in Bayard.
> THE COURT: But what if I said you went to Scottsbluff? Would I be telling the truth?
> [I.A.]: No.
> THE COURT: What would that be?
> [I.A.]: A lie.

The court then asked I.A. what her favorite color was--"pink"--and whether it would be a truth or a lie if the court told someone else that her favorite color was brown. I.A. identified that statement as a lie, and she told the court that she would tell the truth when she was asked questions. The court then placed I.A. under oath, asking her, "[D]o you promise to tell me the truth to the questions asked today? . . . And you promise not to tell a lie to the questions asked today?" I.A. responded affirmatively to both questions.

On direct examination, I.A. again stated that she was 7 years old. She described living in a trailer house with her mother, two sisters, and two brothers. I.A. said that she knew Vance because his father "used to stay with [them] a little bit because he used to babysit [them]." She described that Vance and his father lived in a house that was near a trailer house where they kept "some old

stuff that they don't use anymore." She said that she occasionally stayed the night there. I.A. stated, "[Vance] took me to the trailer across the house, and I didn't know what he was doing until he did it to me." She said that no one else was in the trailer when they went there. When asked to describe what happened, I.A. said,

> Well, he said we - he has a piece of candy for me, but it wasn't a piece of candy. . . . It was some - it wasn't - it was part of him. It was, like, the boy part. . . . He tricked me and saying that he had a piece of candy. So he said to close my eyes and open my mouth, and I did. And so he - instead he put his boy part in my mouth.

I.A. said that she ran out of the trailer.

The State asked I.A., "[I]n regards to his boy part, are you referring to a penis?" She answered, "Yes." Vance objected on the basis of foundation, which objection the court overruled. The State then handed I.A. a "picture of a kid" and asked her to circle in red the area where Vance's boy part was located. That picture was admitted as exhibit 1 without objection. The State then provided I.A. with another picture and asked her to circle in green where "Vance stuck his boy part" on her. She noted that she drew the circle a bit too large as it included the nose, and she said, "[h]e never put it over by my nose." That picture was admitted as exhibit 2 without objection.

I.A. testified that she felt "scared and sad" after she ran away from Vance. She also said that she did not tell anyone about what had happened because she "was too scared." She said that she feared that "everyone [was] going to be angry" and that she would get in trouble for going to the trailer with Vance. When the State asked I.A. whether all the events she described had occurred in Scotts Bluff County, the court sustained Vance's objection based on foundation.

During cross-examination, I.A. recited in order the months January through August but said that she did not know any other months. She identified what time it was based on the clock in the courtroom. I.A. testified that she first told people who were at her school about the incident, not her mother or father. She said that the people at school were asking her about fighting that was going on in her home. I.A. testified that the incident occurred before she went to kindergarten and that she thought that she was 4 or 5 years old at the time it occurred. Vance offered a videotape of I.A.'s interview at Capstone, which was admitted as exhibit 3 without objection.

On August 26, 2019, the court entered its order finding beyond a reasonable doubt that Vance had committed the crime of first degree sexual assault as alleged in the petition as amended. The court noted that it had reviewed exhibit 3, the videotaped interview of I.A. conducted at Capstone, which was offered by Vance. Additionally, the court specifically found "the State's witness (victim) to be very credible." The court scheduled disposition for approximately 1 month later and ordered that a presentence investigation and sex offender assessment be conducted.

Vance now appeals.

## ASSIGNMENTS OF ERROR

Vance assigns that the court erred in finding that the juvenile victim was competent to testify.

- 3 -

STANDARD OF REVIEW

Whether a child witness should be permitted to testify is committed to the discretion of the trial court. *In re Guardianship of Robert D.*, 269 Neb. 820, 696 N.W.2d 461 (2005). The question of competency of a child witness lies within the discretion of the trial court, and that determination will not be disturbed in the absence of an abuse of discretion. *State v. Earl*, 252 Neb. 127, 560 N.W.2d 491 (1997).

ANALYSIS

Vance argues that the court erred in finding that the 7-year-old victim, I.A., was competent to testify during the contested adjudication. However, Vance never objected to her being called as a witness or to challenge her competency and only objected twice during the State's direct examination. Vance objected when I.A. was asked whether she was referring to Vance's penis when she said "boy part," which objection the court overruled, and objected again when she was asked whether all the events had occurred in Scotts Bluff County, which objection the court sustained. Moreover, Vance offered the videotaped interview of I.A. conducted at Capstone, which was admitted into evidence and which matched the content of her testimony.

Failure to make a timely objection waives the right to assert prejudicial error on appeal. *Western Ethanol Co. v. Midwest Renewable Energy*, 305 Neb. 1, 938 N.W.2d 329 (2020). If, when inadmissible evidence is offered, the party against whom such evidence is offered consents to its introduction or fails to object or to insist upon a ruling on an objection to the introduction of the evidence and otherwise fails to raise the question as to its admissibility, he is considered to have waived whatever objection he may have had thereto, and the evidence is in the record for consideration the same as other evidence. *State v. Howell*, 26 Neb. App. 842, 924 N.W.2d 349 (2019).

Because Vance failed to object to I.A. being called as a witness or to the testimony she offered, her competency to testify cannot now form the basis of error on appeal. We further note that Vance not only failed to object to her testifying, but he effectively endorsed her testimony by offering into evidence a videotape of her interview at Capstone, the content of which was essentially the same as her live testimony. Assigning error to I.A.'s competency to testify is disingenuous and fails as a matter of law.

Additionally, we note that an appellate court may, at its option, notice plain error. *State v. Galvan*, 305 Neb. 513, 941 N.W.2d 183 (2020). Plain error exists where there is an error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. *Id*. We find no plain error in the court's determination that I.A. was competent to testify at trial. It inquired into her understanding of truth and lies and established her intent to testify truthfully and accurately. We therefore affirm the district court's decision.

CONCLUSION

Based on the foregoing, we find no error in the district court's finding that I.A. was competent to testify in the contested adjudication.

AFFIRMED.